PUBLIC VERSION

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| OFFICINA MECCANICA ROSELLI S.R.L.,<br>Plaintiff,<br>v.<br>UNITED STATES,<br>Defendant. | **Court No. 26-04652**<br><br>**PUBLIC VERSION** |

**COMPLAINT**

1. Plaintiff Officina Meccanica Roselli S.r.l. ("Plaintiff" or "Roselli"), by and through its attorneys, hereby alleges and states as follows:

**JURISDICTION**

2. Roselli brings this action pursuant to 19 U.S.C. §§ 1516a(a)(2)(B)(iii) and (a)(2)(B)(i) to contest certain aspects of the final results of the U.S. Department of Commerce ("Commerce") in connection with its administrative review of the countervailing duty ("CVD") order on forged steel fluid end blocks from Italy, covering the period January 1, 2024 through December 31, 2024 (the "POR"). *See Forged Steel Fluid End Blocks From Italy: Final Results of Countervailing Duty Administrative Review: 2024*, 91 Fed. Reg. 60,084 (Dep't Commerce Sept. 22, 2026) ("*Final Results*").

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) because this action is commenced pursuant to 19 U.S.C. § 1516a.

**PARTIES AND STANDING**

4. Forged steel fluid end blocks ("FEBs") are "steel forgings that are component of fluid end modules ('FEMs'), which are incorporated into hydraulic pumps used for drilling or hydraulic fracturing (sometimes referred to as 'fracking') in the oil and gas industry." *Fluid End*

*Blocks from China, Germany, India, and Italy*, Inv. Nos. 701-TA-632-635 & 731-TA-1466 and 731-TA-1468 (Final), USITC Pub. 5152 (Jan. 2021), at 10. An FEB "may be imported in finished condition (*i.e.*, ready for incorporation into a pump fluid end assembly without further finishing operations) or unfinished condition (*i.e.*, forged but still requiring one or more finishing operations before it is ready for incorporation into a pump fluid end assembly). Such finishing operations may include: (1) Heat treating; (2) milling one or more flat surfaces; (3) contour machining to custom shapes or dimensions; (4) drilling or boring holes; (5) threading holes; and/or (6) painting, varnishing, or coating." *Id*. at 9.

5. Roselli is a company located in Italy that performs machining services on FEBs, on a tolling basis. That is, Roselli does not produce FEBs and does not take ownership of FEBs, but instead performs machining finishing operations on a tolling basis on unfinished FEBs manufactured by FEB producers in Italy. Roselli was also an importer of record for certain machined FEBs entered into the United States during the POR. Roselli is an interested party within the meaning of 19 U.S.C. §§ 1677(9)(A) and 1516a(f)(3) and actively participated in the 2024 administrative review. Accordingly, Roselli has standing pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c) to commence this action.

6. Defendant is the United States.

## TIMELINESS OF THE ACTION

7. On September 22, 2026, Commerce published the *Final Results* in the Federal Register. 91 Fed. Reg. at 60,084.

8. On October 20, 2026, Roselli timely filed a Summons, ECF No. 1, within thirty days of publication of the *Final Results*, in accordance with 19 U.S.C. § 1516a(a)(2)(A)(i)(I), 19

U.S.C. § 1516a(a)(2)(B)(iii), 28 U.S.C. § 2636(c), and Rules 3(a)(2) and 6(a) of the Rules of this Court. Roselli timely files this complaint within 30 days of filing of the Summons.

## STATEMENT OF FACTS

9. On January 31, 2025, Ellwood City Forge Company, Ellwood Quality Steels Company, Ellwood National Steel Company, and A. Finkl & Sons (collectively "Petitioners") requested that Commerce conduct an administrative review of the CVD order on FEBs from Italy for the 2024 POR. Letter to Sec'y of Commerce from Rock Creek Trade re: Forged Steel Fluid End Blocks from Italy: Petitioners' Request for Administrative Review (Jan. 31, 2025). Petitioners' letter specifically requested that Commerce conduct an administrative review of several alleged producers and exporters, including Roselli, as well as Lucchini Mame Forge S.p.A. ("Lucchini"), Cogne Acciai Speciali S.p.A. ("Cogne"), Forge Monchieri S.p.A. ("Forge Monchieri"), and Metalcam S.p.A. ("Metalcam"). *Id.*

10. On February 21, 2025, Commerce published a notice of initiation of administrative review of the CVD order on FEBs from Italy for the 2024 POR, including Roselli, as well as Lucchini, Cogne, Forge Monchieri, and Metalcam. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 90 Fed. Reg. 10,048, 10,061 (Dep't Commerce Feb. 21, 2025).

11. On March 3, 2025, Commerce posted a memorandum to the file, placing on the administrative record the results of a data query to U.S. Customs and Border Protection ("CBP") of entries of subject merchandise entered during the POR. Memorandum to The File from Stefan Smith, re: 2024 Countervailing Duty Administrative Review of Forged Steel Fluid End Blocks from Italy—U.S. Customs and Border Protection Data Release (Mar. 3, 2025) ("CBP Data Release Memo").

PUBLIC VERSION

12. The data query results attached to the CBP Data Release Memo, which were released in the form of an Excel file, listed each individual entry entered during the period of review under the relevant case number (C-475-841) as a "Type 03" entry (*i.e.*, an entry for consumption subject to antidumping or countervailing duties). The Excel file included (among other things) the entry date, entry summary number, a 10-digit company-specific CVD case number, value of the entry line number, manufacturer name, and foreign exporter name.

13. The CBP Data Release Memo was not issued as a questionnaire to any specific party. Instead, the CBP Data Release Memo simply stated that "Commerce is placing on the record the CBP data query results and is allowing interested parties an opportunity to provide comments regarding the CBP data and selection of respondents." The CBP Data Release Memo set a deadline for comments of March 10, 2024 {sic} (it should have read 2025 rather than 2024).

14. Roselli did not submit comments in response to the CBP Data Release Memo.

15. On March 17, 2025, Commerce issued a questionnaire to Roselli, noting that the CBP data lists entries naming Roselli and seeking clarification. Letter from John McGowan to Roselli c/o Faegre Drinker re: Administrative Review of the Countervailing Duty Order on Forged Steel Fluid End Blocks from Italy: Quantity and Value Supplemental Questionnaire—Officine Meccaniche Roselli S.r.l. (Mar. 17, 2025) ("Roselli Q&V Questionnaire"). The questionnaire asked one question of Roselli: "Please report the total number and value of FEBs sold/exported to the United States during the POR." *Id.* Attachment.

16. On the same date, Commerce issued identical quantity and value questionnaires to Lucchini, Cogne, and Metalcam.

17. On March 24, 2025, Roselli responded to the Roselli Q&V Questionnaire. Letter to Sec'y of Commerce from Faegre Drinker re: 2024 Administrative Review of Forged Steel Fluid End Blocks from Italy: Roselli Response to Q&V Supplemental Questionnaire (Mar. 24, 2025) ("Roselli Q&V Response"). In its response, Roselli stated that it sold zero FEBs and exported zero FEBs during the POR. Roselli explained as follows:

> During the POR, Roselli performed machining services on a tolling basis for FEBs produced/exported/sold by other parties. Roselli did not produce any FEBs; indeed, Roselli does not have the facilities to manufacture FEBs. Roselli did not sell any FEBs; it only sold its machining services as a tolling contractor. Finally, Roselli did not export the FEBs. Instead, the manufacturer of the FEB is the exporter.

Roselli Q&V Response, at 2. Roselli explained its position that "{n}either the U.S. antidumping statute nor Commerce's regulations define what is an 'exporter'" but that the "exporter" for purposes of this CVD proceeding should defined according to the "knowledge test" that Commerce uses in antidumping duty proceedings. *Id*. at 2-3. Roselli argued that under the "knowledge test," the "exporter" is the first party in the chain of distribution that knows at the time of the sale that the merchandise is destined for the United States. *Id*. at 3. For all subject merchandise in which Roselli was involved during the POR, the manufacturer in Italy knew that the merchandise was destined for the U.S. market and therefore the manufacturer—not Roselli—was the proper "exporter" for purposes of which parties Commerce could calculate a net subsidy rate in the administrative review. *Id*.

18. As part of its Q&V Response, Roselli submitted an example entry of subject merchandise entered during the POR for which Roselli was the importer of record, along with several associated documents. Several of the documents demonstrated that Roselli performed only machining services on behalf of the producer of the FEBs in the entry, and that the producer was the first party in the chain of distribution that was aware that the subject merchandise was

destined for the United States. *Id*. at 3-5. One of the documents in the sample package also was a European Union export declaration, in which the producer was listed as the "consignor/exporter." *Id*. at 5. Roselli also stated that the process described in the sample entry package was the same pattern for all subject merchandise entered during the POR in which Roselli was involved. *Id*. at 5. Roselli concluded that in its view, in no case was Roselli either the manufacturer or the exporter for any of the entries during the POR. Roselli added that it "stands ready to answer any questions that Commerce may have regarding this entry or any other entries on CBP's spreadsheet." *Id*.

19. Neither the Petitioners nor any other interested party submitted comments on Roselli's Q&V Response.

20. Commerce did not issue any further questionnaires to Roselli during the course of the proceeding.

21. Also on March 24, 2025, Roselli submitted to Commerce a notice that it had no exports or sales of subject merchandise during the POR. Letter to Sec'y of Commerce from Faegre Drinker, re: 2024 Administrative Review of Forged Steel Fluid End Blocks from Italy: Roselli Notice of No Exports or Sales (Mar. 24, 2025). Roselli noted that although it was importer of record for certain entries during the POR, Roselli was neither the producer nor the exporter for any such entries. *Id*. at 1.

22. On April 8, 2025, Commerce issued a memorandum identifying which respondents it had decided to select for individual examination in the proceeding. Memorandum to Alex Villaneuva from Ted Pearson and Stefan Smith, re: Countervailing Duty Administrative Review of Forged Steel Fluid End Blocks from Italy: Respondent Selection (Apr. 8, 2025) ("Respondent Selection Memo").

23. In the Respondent Selection Memo, Commerce first explained that it had determined it would limit its examination of respondents in the proceeding to a reasonable number of exporters and/or producers. Respondent Selection Memo, at 4.

24. In the Respondent Selection Memo, Commerce next explained that it selected the two top producers and/or exporters of FEBs entered for consumption in the United States and identified those companies as Lucchini and Metalcam. *Id*. at 5. Commerce included in the Respondent Selection Memo a table identifying the entry volume of exports of FEBs from Italy during the POR, by producer/exporter, which table listed [ ] for the total quantity and entry volume percentage for Roselli. *Id*. Attachment.

25. On March 5, 2026, Commerce issued a memorandum attaching certain entry documentation that Commerce requested from CBP based on comments submitted by Cogne in the administrative review. Memorandum to The File from Stefan Smith, re: Release of U.S. Customs and Border Protection Entry Summary Documentation (Mar. 5, 2026) ("CBP Entry Summary Documentation Memo"). The memo was not styled as a questionnaire to Roselli or any other party to the proceeding. Instead, Commerce stated simply that "Commerce is providing an opportunity for parties to submit comments on the entry documents" and set a deadline of March 12, 2026 for parties to submit comments.

26. Neither Roselli nor any other party submitted comments on the CBP Entry Summary Documentation Memo.

27. On April 14, 2026, Commerce published in the Federal Register the preliminary results of the 2024 administrative review. *Forged Steel Fluid End Blocks from Italy: Preliminary Results and Partial Rescission of Countervailing Duty Administrative Review; 2024*, 91 Fed. Reg. 19,105 (Dep't Commerce Apr. 14, 2026) ("Preliminary Results FR Notice"). In the

Preliminary Results FR Notice, Commerce stated that there were two companies for which a review was requested, which had reviewable entries, and which were not selected to be mandatory respondents: Cogne and Roselli. *Id*. at 19,106. For those two companies, Commerce applied the weighted average of the subsidy rates calculated for the two mandatory respondents (*i.e.*, Lucchini and Metalcam). *Id*. As a result, Commerce preliminarily determined a countervailable subsidy rate of 9.15 percent for Roselli. *Id*.

28. In an April 9, 2026 decision memorandum summarizing the basis for Commerce's preliminary results, Commerce did not further elaborate on the preliminary results with respect to Roselli (other than to recount the various documents submitted to that point in the administrative review), except for two points. First, Commerce stated that although Cogne and Roselli each reported that they did not have entries of subject merchandise during the POR, "because the CBP data indicates that CAS and Roselli had entries during the POR and are both listed in the CBP entry documentation requested by Commerce, we are not rescinding this review with respect to either company." Memorandum to Christopher Abbott from Scot Fullerton, re: Decision Memorandum for the Preliminary Results of the Administrative Review of the Countervailing Duty Order on Forged Steel Fluid End Blocks from Italy; 2024 (Apr. 9, 2026) ("Preliminary Decision Memo"), at 5. Second, Commerce reiterated the explanation in the Preliminary Results FR Notice that it was applying a preliminary subsidy rate of 9.15 percent *ad valorem* to Cogne and Roselli, consistent with section 705(c)(5) of the Tariff Act. *Id*. at 6.

29. In the Preliminary Decision Memo, Commerce explained that it applied adverse facts available ("AFA") for certain aspects of its preliminary results, *see id*. at 6-9, but Commerce did not purport to apply AFA in the calculation of a preliminary net subsidy rate for Roselli.

30. On May 12, 2026, Roselli submitted a case brief in the administrative review. Letter from Faegre Drinker to Sec'y of Commerce, re: 2024 Administrative Review of Forged Steel Fluid End Blocks from Italy: Roselli Case Brief (May 12, 2026) ("Roselli Case Brief").

31. In its Case Brief, Roselli reiterated its argument that Commerce should rescind the administrative review with respect to Roselli because Roselli was neither the producer nor exporter of subject merchandise entered during the POR. Roselli Case Brief, at 1. Roselli recapped its arguments from the Roselli Q&V Response that: (1) it was not a producer of subject merchandise because it does not manufacture FEBs but only machines unfinished FEBs produced by other Italian producers and does so only on a tolling basis; and (2) it was not an "exporter" for purposes of Title VII of the Tariff Act, because, consistent with the "knowledge test," the "exporter" in all cases where Roselli was involved was the Italian manufacturer of the unfinished FEBs. *Id*. at 8-10.

32. In its Case Brief, Roselli also explained in detail that the entry information in the CBP Entry Summary Documentation Memo, consisted of entry packages supplied by Roselli to CBP in response to requests for information that CBP issued to Roselli, was consistent with Roselli's position that Roselli is not the manufacturer in any instances and that its role was limited to providing machining services. Roselli Case Brief, at 4-7. Roselli added that none of the entry documentation purported to make a legal determination as to the identity of the "exporter" for purposes of Title VII of the Tariff Act. *Id*. at 6-7.

33. Finally, in its Case Brief, Roselli argued that treating Roselli as the "exporter" for any of the subject merchandise entered during the POR would lead to absurd results. *Id*. at 11-13.

34. Neither the Petitioners nor any other party to the proceeding submitted a rebuttal brief disputing or otherwise commenting on the points raised in Roselli's Case Brief.

35. On September 22, 2026, Commerce issued final results in this proceeding. *Forged Steel Fluid End Blocks From Italy: Final Results of Countervailing Duty Administrative Review; 2024* (Dep't Commerce Sept. 22, 2026) ("Final Results FR Notice").

36. In the Final Results FR Notice, Commerce stated that it made a change from the Preliminary Results in that it decided to apply AFA to Roselli. Final Results FR Notice, at 60,084. As a result, Commerce determined a final countervailable subsidy rate of 45.53 percent for Roselli. *Id*. at 60,085.

37. In a decision memorandum accompanying the Final Results, Commerce claimed that when it released the CBP Entry Summary Documentation Memo, it "provided Roselli an opportunity to remedy the deficiency in its reporting, against the CBP data and entry documentation, pursuant to 782(d)(1) of the Act." Memorandum to Steven Presing from Scot Fullerton, re: Issues and Decision Memorandum for the Final Results of the Countervailing Duty Administrative Review of Forged Steel Fluid End Blocks from Italy; 2024 (Sept. 17, 2026) ("Final I&D Memo"), at 7 (citing 19 U.S.C. § 1677m(d)(1)).

38. In the Final I&D Memo, Commerce asserted that in response to its "request for comments on the CBP entry documentation placed on the record, Roselli elected to not provide any clarification or comments. Accordingly, we determine that Roselli withheld necessary information that was requested of it creating a gap in the record." Final I&D Memo, at 7. Commerce claimed further that "Roselli's failure to provide complete and accurate sales information has created a gap in the record because we were not aware of the extent of its export activities until late in the proceeding. If such information had been available early in this

proceeding, Commerce may have selected Roselli as a respondent and examined the nature of its sales and the scope of the subsidies attributable to it and to its producers." *Id*.

39. In the Final I&D Memo, Commerce concluded that "Roselli did not cooperate to the best of its ability to provide its Q&V information" and "did not provide clarification regarding, or rebut, the CBP entry documentation placed on the record, in response to Commerce's request." *Id*. at 8. "Consequently, we find that Roselli withheld information necessary to remedy the deficiency between its reporting and the CBP and entry documentation in response to our requests for information and significantly impeded this proceeding." *Id*.

40. In a separate memorandum, Commerce attempted to further bolster its application of AFA. *See* Memorandum to John McGowan from Stefan Smith, re: Countervailing Duty Administrative Review of Forged Steel Fluid End Blocks from Italy; 2024: Roselli Final Results Analysis (Sept. 17, 2026) ("Roselli Final Results Analysis").

41. According to the Roselli Final Results Analysis, Commerce claimed that "we issued a supplemental questionnaire to Roselli due to the CBP data containing mixed units of measure." *Id*. at 1. Commerce failed to note that it issued an identical supplemental questionnaire to Lucchini, Metalcam, and Cogne, in addition to Roselli. Further, Commerce does not (and cannot) cite to anything in the supplemental questionnaire itself or anything elsewhere administrative record indicating why it issued supplemental Q&V questionnaires.

42. The Roselli Final Results Analysis claims that with respect to the entry documentation supplied in the CBP Entry Summary Documentation Memo, "{t}he documentation for each entry indicated that Roselli acted as an exporter." Roselli Final Results Analysis Memo, at 3. The memo identifies various categories of documents included in the CBP Entry Summary Documentation Memo that Commerce claims supports its assertion that Roselli

is listed "as the shipper and/or exporter of subject merchandise," but does not identify the specific documents or where precisely in those specific documents Roselli is listed as an "exporter." *Id*. Nor does Commerce provide any definition, explanation, or support for an assumption that where Roselli acts as a "shipper" of subject merchandise that that makes Roselli necessarily the "exporter" of that merchandise.

43. Finally, the Roselli Final Results Analysis addresses Roselli's consistent position throughout this proceeding that the identity of the "exporter" for purposes of the CVD law should be the same "knowledge test" applied to antidumping proceedings. *Id*. at 12. Commerce asserted—for the first time in this administrative review—that the knowledge test is relevant to antidumping proceedings but not CVD proceedings. *Id*.

## <u>STATEMENT OF CLAIMS</u>

## COUNT ONE

44. Paragraphs 1 through 43 are hereby incorporated by reference.

45. Commerce's determination that Roselli was an "exporter" of subject merchandise, for purposes of the POR, was not supported by substantial evidence and is otherwise contrary to law.

46. Although Section 777A(e)(1) of the Tariff Act provides that in CVD investigations and administrative reviews "the administering authority shall determine an individual countervailable subsidy rate for each known exporter or producer of the subject merchandise," 19 U.S.C. § 1677f-1(e)(1), neither the Tariff Act nor Commerce's regulations define who is an "exporter" for purposes of the CVD law.

47. In the *Final Results*, Commerce claims that Roselli was an "exporter" of subject merchandise during the POR, but nowhere does Commerce articulate the test for determining

what activities make a company be considered to be an "exporter." Nor does Commerce cite to any court opinion or past administrative precedent defining who is an "exporter" for poses of the CVD law.

48. Without articulating a test of what constitutes an "exporter," Commerce's conclusion that Roselli's activities with respect to subject merchandise entered during the POR makes Roselli an "exporter" is unsupported by substantial evidence and is otherwise not in accordance with law.

**COUNT TWO**

49. Commerce's decision to apply AFA to Roselli was not supported by substantial evidence and is otherwise contrary to law.

50. Section 776(a) of the Tariff Act provides that if: (1) "necessary information is not available on the record"; or (2) an interested party (a) "withholds information that has been requested by the administering authority," or (b) "fails to provide such information by the deadlines for submission of the information or in the form and manner requested, subject to subsections (c)(1) and (e) of section 1677m of this title, or (c) "significantly impedes a proceeding under this subtitle; or (d) provides such information but the information cannot be verified," then the administering authority "shall, subject to section 1677m(d) of this title, use the facts otherwise available in reaching the applicable determination under this subtitle." 19 U.S.C. § 1677e(a).

51. Section 777(b) of the Tariff Act provides that if the administering authority "finds that an interested party has failed to cooperate by no acting to the best of its ability to comply with a request for information from the administering authority," then the administering authority, in reaching its determination, "may use an inference that is adverse to the interest of

that party in selecting from among the facts otherwise available." 19 U.S.C. § 1677e(b).

52. Section 782(d) of the Tariff Act provides that if the administering authority "determines that a response to a request for information under this subtitle does not comply with the request," the administering authority "shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations or reviews under this subtitle." 19 U.S.C. § 1677m(d).

53. In this proceeding, Commerce issued one—and only one—questionnaire to Roselli: the Roselli Q&V Questionnaire issued on March 17, 2025. *See supra* ¶ 15. The questionnaire consisted of one question: "Please report the total number and value of FEBs sold/exported to the United States during the POR." *Id*. Attachment.

54. Roselli responded to the Q&V Questionnaire on March 24, 2025. *See supra* ¶ 17 (citing Roselli Q&V Response). In its response, Roselli fully and truthfully answered the question based on its understanding of the law. Roselli first stated that it did not produce any FEBs and indeed does not have the facilities to manufacture FEBs. *See supra* ¶ 17 (citing Roselli Q&V Response, at 2. Commerce did not dispute this point in its final determination. *See* Roselli Final Results Analysis, at 3.

55. Roselli also made abundantly clear in its Q&V Questionnaire Response that its position that it was *not* an exporter of subject merchandise was based primarily on the fact that the producer of the unfinished FEBs, rather than Roselli, was the "exporter" based on the "knowledge test". Roselli Q&V Response, at 2-3. Roselli also provided numerous documents supporting its position that the manufacturer was the first party in the chain of distribution that is aware that the subject merchandise is destined for the United States. *Id*. at 3-5. In addition,

Roselli noted that one of the documents in the sample package also was an EU export declaration, in which the producer was listed as the "consignor/exporter." *Id*. at 5. Roselli also stated that the process described in the sample entry package was the same pattern for all subject merchandise entered during the POR in which Roselli was involved. *Id*. at 5.

56. At this point, if Commerce believed that the knowledge test does not apply in determining whether Roselli was an "exporter" of any of the subject merchandise entered during the POR, it was incumbent on Commerce to issue a supplemental questionnaire to elicit whatever additional information it needed to determine whether Roselli was an exporter, and if so, which entries during the period of review entered with Roselli serving as the exporter. It was very early in the investigation at this point: March 24, 2025, so there is no possibility that it would have been "impracticable" for Commerce to issue a supplemental questionnaire asking Roselli to explain any discrepancy or provide additional information.

57. The CBP Entry Summary Documentation Memo, issued on March 5, 2026, was not a questionnaire to Roselli, despite Commerce's attempt to spin this document as "an opportunity" for Roselli "to remedy the deficiency in its reporting" "pursuant to section 782(d)(1) of the Act. The CBP Entry Summary Documentation Memo was not addressed to Roselli, but was addressed only to "interested parties authorized to received {sic} business proprietary information (BPI) under the administrative protective order (APO)." CBP Entry Summary Documentation Memo, at 1. To the contrary, the CBP Entry Summary Documentation Memo was placed on the record at the request of Cogne and was related to an apparent [ ]; the cover memo did not mention Roselli at all. Letter to Sec'y of Commerce from Faegre Drinker, re: 2024 Administrative Review of Forged Steel Fluid End Blocks from Italy: Roselli Ministerial Error

Comments (Sept. 23, 2026), at 3-4. Although the documents attached to the CBP Entry Summary Documentation Memo consisted of documents provided by Roselli in response to CBP requests for information, the memo itself did not contain any questions to Roselli. Indeed, the memo did not contain any specific requests for comments or new factual information of any parties, but only vaguely stated that "Commerce is providing an opportunity for parties to submit comments on the entry documents." CBP Entry Summary Documentation Memo, at 1. As such, Commerce cannot credibly claim that Roselli failed to cooperate or "to comply with a request for information" when it did not submit comments on the CBP Entry Summary Documentation Memo.

58. Notwithstanding Commerce's assertion in the Final I&D Memo that "Roselli elected to not provide any clarification or comments" in response to the CBP Entry Summary Documentation Memo, Commerce gave no hint in its April 8, 2026 Preliminary Decision Memo that it was contemplating applying AFA to Roselli. Instead, Commerce only stated that "because the CBP entry data indicates that CAS and Roselli had entries during the POR and are both listed in the CBP entry documentation requested by Commerce, we are not rescinding this review with respect to either company." Preliminary Decision Memo, at 5. *See supra* ¶¶ 28-29.

59. The first indication Commerce gave that it was dissatisfied with the information that Roselli provided Commerce was in the final results. Effectively, Commerce decided at the conclusion of the proceeding to punish Roselli for what Commerce apparently believed to be a mistaken interpretation of who is an "exporter".

60. While Commerce is entitled to interpret the term "exporter" for purposes of the CVD law—subject to judicial review—Commerce is not entitled to announce that interpretation for the first time at the end of the administrative review and apply AFA to Roselli for not

divining Commerce's interpretation in advance. Even if Commerce was correct that Roselli is an "exporter", then Commerce should have either simply applied to Roselli the non-selected rate of 14.55 percent, *see Final Results*, at 60,085. Commerce's decision instead to apply an AFA rate of 45.53 percent to Roselli is therefore unsupported by substantial evidence and is otherwise not in accordance with law.

## DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter judgment in its favor and against the Defendant:

(1) hold Commerce's *Final Results* unsupported by substantial evidence and otherwise not in accordance with law;

(2) remand Commerce's *Final Results* to Commerce for a redetermination consistent with the judgment and finding of this Court; and

(3) provide such additional relief as the Court may deem just and proper in the circumstances.

Respectfully submitted,

/s/ Carrie Bethea Connolly

Carrie Bethea Connolly
Daniel R. Wilson
Richard P. Ferrin
FAEGRE DRINKER BIDDLE & REATH LLP
1500 K Street, N.W.
Washington, DC 20005
Telephone: (202) 230-5330

*Counsel to Roselli*

November 17, 2026